Appellate. Mr. Graber to the Appellate. Mr. Cohn to the Appellate. Mr. Graber, good morning. Good morning. May it please the Court, I am Sebastian Graber, Counsel for Larry Wilkerson, along with my co-counsel, Mr. Cohn. And I want to start by emphasizing that in this case, we are, once again, although this Court has not very often addressed the issue of a juror who has expressed the problem following the law, and other circuits also have really rarely addressed that. In the Brown case, this Court squarely faced that problem. In Brown, after some limited voir dire and colloquy with the juror, Judge Robinson determined that there was reason to dismiss the juror. And this Court found, based on that limited colloquy, that there was an ambiguity in the record as to whether or not that juror had some doubts that were evidence-based. Or the juror said that he had some problems with the way the evidence had been presented, but he initially had indicated that he had a problem with the RICO law, and he didn't like that law, didn't intend to follow it. So the Brown case, and in cases following Brown from this Court, has not moved away from Brown, but it clarified Brown. Basically saying that if there's an independent reason that is not at all linked to a juror's view of the case, then there may be a valid basis under Rule 23B for good cause to remove the juror. But if there's an ambiguity about that, then dismissal is not warranted and would violate the Sixth Amendment because there's a right to a unanimous juror based on the 12 jurors who began deliberations and took that oath. So in this case, the juror sent the note saying she had problems with the law, didn't think she could follow the law, but she said, in addition, she said, I am experiencing emotional and mental distress. And for this alone, she asked to be relieved of her duties. So it wasn't just that she couldn't follow the law. She had, in addition to that, some stress. And courts know that jurors who are experiencing stress most often, it's because there's a problem with the jurors in terms of a conflict in their views, most likely dealing with the evidence. When the judge initially brought the juror in and he was talking to counsel and I was involved in the trial and the court's initial assessment, his intuitive assessment, was correct. He said, I assume we'll have to talk with the juror to understand the concern as to whether it's an evidentiary based concern or not, or if it's a legal based concern or a health issue. So the judge brought the juror in and he took a break and looked at some of the case law at the time. Now, of course, this was 2004 before Ginyard, which was the first case that moved a little bit from Brown and clarified Brown, saying that an independent reason for dismissal, such as a juror removing notes from the courtroom, which was from the jury room, which was what happened in McGill, or the situation in Ginyard where the juror says, I have an employment opportunity, please excuse me. The court did excuse that juror. But then this court reversed, saying, although it could be proper to even where a juror says she has problems with the evidence to remove the juror. In Ginyard, the court didn't have sufficient inquiry into whether those employment based concerns were real or whether they could be worked out in some way. So there has to be some limited inquiry. And that's what we were asking here of the chief judge, to have some limited inquiry of the juror. Because when he brought her back in, he said, you said you're feeling emotional and mental distrust. You felt that alone was enough to ask for replacement. Is that just because of deliberations, you mean? I don't want to get, she says, the whole thing. The judge said the whole case. She said the whole case. Now, she didn't say, when he said, is that just because of deliberations? She didn't say, no, it's not because of deliberations. She said it was the whole case. And what does the case involve? The case obviously involves evidence. To many jurors, the case means the prosecution case. She could be having problems with the prosecution case. But in any event, it's ambiguous what that means. I have spent hours trying to figure out what that meant. So can I ask you, those are the key lines that you rely on in the transcript. And in order for us to rule in your way, based on Brown and those cases, your argument is that we have to conclude that the minute there's an exchange about emotional and mental distress, that necessarily that is grounded in a possibility that it has an evidentiary foundation, even though there's nothing inherent in that that tells you that it would be an evidentiary foundation. There has to be some narrowly tailored, limited inquiry. For example, ma'am, is any of your stress based at all on an evidence-based concern? Or is any of your stress based on the fact that your views of the evidence, and don't tell me what they are, but that they differ from other jurors? That's all. Brown says you cannot delve deeply. We never ask. Judges, district judges have to be very careful here. Very careful, yes. The minute you start asking anything that could trigger this, you're going to run into problems going the other way. But some limited inquiry. If you look at the Thomas Court case from the Second Circuit, which is a very well-reasoned opinion, the court there said, without such an inquiry, however, I mean, you recognize the problems about getting into juror deliberations, but the court said, at page 621, I believe, without such an inquiry, however, the court will have little evidence with which to make the often difficult distinction between the juror who favors acquittal because he is purposefully disregarding the court's instructions, and the juror who is simply unpersuaded by the government's evidence. And to remove a juror because he is unpersuaded, obviously, denies the defendant a Sixth Amendment right. So a very narrowly tailored inquiry. And if the court doesn't want to do that, then the court has the option of declaring a mistrial. But removing a juror where there's an ambiguity, Brown said, no, you cannot do that. I think the question is whether there's enough of an ambiguity, because you would agree, at least, that in Brown, the exchange more expressly evoked a concern about evidence than the exchange here. Because Judge Robinson asked a few more questions, Judge. I don't know that the judge in that case asked more questions. I think the answers indicated... He said, what is the nature of your concern? Now, if the judge had said, what is the nature of your concern, she might have provided a little more information. But all he said is, is it just because of deliberations? Now, the exchange in Brown, the court says, when I asked you that question, would you follow the court's instructions, you would say, no, because I don't like the law. That's not dissimilar to what happened here, because that's focusing on whether the juror can agree with the law. And then the voluntary answer was, it's the way it's written and the way the evidence has been presented, so that the juror comes back and affirmatively raises the possibility of an evidentiary. But he did ask, what is the nature of your concern? It was a little more of an open-ended question. At the outset, before that, there was a... I can't remember exactly when, but... Go ahead. But here... What is your position... I'm sorry, ma'am. What is your position about what we do, how or if we consider the bizarre aftermath of this juror's relationship with the defendant? Are we supposed to ignore that? I'm just asking your position. That is a separate issue. We didn't raise that on appeal because of the Supreme Court's case of Wargrave, where, you know, you can't get into... All right, so are you saying we should ignore the aftermath? For purposes of this case, that's because it had not come out at that time. It wasn't legally relevant at the time. And certainly, to the appellant, the proper course would have been for the court to say, you swore an oath to follow the law. You are instructed to follow the law. And I did that in the Abel case from the 11th Circuit. Go back, and you swore your oath, and follow the court's instructions. But if you have a conscientiously held view about the evidence, of course, that is something you can hold on to. So the problem in this case was the ambiguity. And to hinge in such a case where there's so much at stake here, like sentence, the judge simply did not ask a very limited question. And we weren't... You know, we were all aware of Brown. I asked, I don't know, 10, 11 times for the judge to just frame a very limited question. He was totally...could have done that. We made several suggestions to him. And then it could have come out that the juror could have said, no, I don't have problems about the evidence. I just don't like the law. Now there is...and McGill is really important here because it focuses on the view of the case. And it makes the recognition that a juror, even a juror who intends to nullify, that's a view of the case. It's not a separate thing like misconduct, like taking juror notes out of the juror room. And so McGill was very important because it recognized there can be a confusion. For example, if a juror says, I'm struggling here with the evidence. I don't believe the cooperators. I believe what they're saying is hearsay. And another juror says, but we're instructed that co-conspirator statements are not hearsay and they can come in. And the juror says, I just don't believe the cooperators. That's where the law of the co-conspirator statements come in. And a juror feeling she can't believe the cooperators can have a confusion and a clash where it becomes difficult to separate the two. And I see my time is up for now. I'll give you that reply. Thank you. Mr. Coleman. Good morning. May I please report my name is Nick Coleman and I represent the United States. Beginning with the issue Mr. Graber has raised of juror 0552, we respectfully submit that Judge Hogan did not abuse his discretion in dismissing the juror after she asked to be dismissed because she said that she strongly disagreed with the law. We disagree with counsel's characterization of Judge Hogan's colloquy with the jurors being insufficient. In fact, it goes on I think for about three transcript pages and Judge Hogan was very careful to do two things. One, to make sure that he gave the juror a chance to confirm that what she had said in her note was what the court understood from it, namely that she just really disagreed with the law and the instructions on the law that had been given to her and that she wasn't going to volunteer, that it was something else going on, unlike what happened in Brown. Now, in Brown it is absolutely the case that it was the juror himself who said that he had a problem with the evidence. He said both that the evidence, he said the way the evidence had come out and then he also made the remark that it wasn't just that he disagreed with the law, but he said if the evidence had been presented in a way that was consistent with the law, in other words, that was a juror who was clearly signaling that his disagreement with the law was so mixed with his view of the evidence that it was in fact ambiguous. That isn't the case here. At no point did the juror in this case express any concern about the evidence. What was clear was that she simply disagreed with the law and it was that disagreement that caused her to say that she didn't feel that she could give a proper decision and follow her oath. In fact, as she said in her note, she said it could lead to a biased decision, in other words, a decision that was not based on a proper view of the evidence or a fair application of the law. Under those circumstances, we respectfully submit that Judge Hogan did not abuse his discretion and certainly didn't clearly err in finding that this juror said that she simply couldn't follow the court's instructions. So what about the part where, because I don't think they're relying on the exchange or either the part of her note that deals with the law or the exchange that deals with her inability to follow the law, there is a separate question about emotional distress. Yes. And do you, is the government's view that when somebody raises a question about emotional distress, that just doesn't involve any possibility of the emotional distress coming from a concern about the evidence and deliberations that deal with the evidence? So I think what Judge Hogan clearly wanted to make sure of, and that's what he does ask, is this as a result of deliberations? He starts to say, I don't want to get into that. She says the whole case, and Judge Hogan doesn't end it there, but I think he had to be very careful not to sort of interject on his own, start inquiring about the evidence. I think that would have been fraught with peril. Because once you ask a juror either about sort of her own view of the evidence, she may start telling you her substantive view. And that's, of course, for the jurors to discuss back in the jury room during their deliberations, what is the evidence like. The judge isn't supposed to be sort of eliciting that from a juror at that point unless she's volunteering it. The other thing is, you know, he did ask about deliberations. She doesn't say it's the deliberations. She says it's the whole case. But then in the follow-up questioning, it becomes clear what she's concerned about that she says she strongly disagrees with the law, and she feels this is serious because it's someone's life. Again, that is fully consistent with a view of the fact that she simply disagrees with the law, as, of course, it's now been explained to her. And, you know, again, doesn't raise the question of whether or not she feels that the evidence is the problem. And I think here there's a big distinction between the surrounding circumstances in Brown and what happened in this case, as Judge Hogan recognized. In Brown, the jury had been deliberating for, I think, five weeks at that point. There had already been a note from the jury that indicated that there was a potential holdout juror because there had been a question before that juror asked for the excuse. There had been a note from the jury saying what happens if, you know, do we have to acquit if one person doesn't believe that the defendant is guilty. At that point, so there were already surrounding circumstances to indicate that this jury is potentially asking to be excused because deliberations over the evidence are now at an impasse. Judge Hogan noted in this case, by the time the juror sends the note out, only three days of deliberations have occurred in a trial that took almost two months. The court noted that there had been no substantive questions asked. After the juror was excused, how long did it take the jury to return its verdict? You know, I'd have to go back and check that. It wasn't immediate because, after all, they had to. Let me just check. Three days, all right. I'll rely on counsel. And I take it the alternate had been excused, so this was an 11-person jury? No, there was a replacement. Oh, it was replaced. I believe the jury was actually replaced. Judge Hogan never asked this juror, maybe did, but I missed it. What exactly in the law was it that she disagreed with? That's true, and I think that might have been a little difficult to sort of phrase or frame. Well, it's also possible she didn't understand the law and that the basis of her disagreement with it was her lack of understanding of what the instruction was. Shouldn't a district judge be required when a juror says, I'm not going to follow the law because I disagree with it, to inquire about what the disagreement is? Well, I'm not sure that that's always the case, and I certainly haven't seen a case that has so held, Your Honor. I'm not saying that would be an absolutely impermissible statement, but here I'm not sure it was necessary because it doesn't appear from anything that this juror said that she didn't understand the law. What she said was she strongly disagreed with it. Well, I know. It could have been based on her misunderstanding. What is the oath that a juror takes with respect to following the instructions? Well, I think I'd have to go back and check the exact wording, but I believe at the beginning of the case they are sworn that they will follow the court's instructions, that they will agree to do that and to be fair and impartial. I just wonder if this is an easy ticket out for jurors to say, oh, I'm not going to follow. I can't follow the law. I disprove it. Excuse. An alternative is to hold her in contempt. I suppose it could be a possibility, Your Honor. I'm not sure that a lot of district judges would want to go that route necessarily because there could be jurors. After all, they do have to make sure that they have a jury pool that comes back, and I think holding jurors in contempt over something like this might be a little bit difficult. I do think that there could be situations and there could be cases in which a juror's responses could signal to the court a lack of understanding or maybe a misunderstanding of the law. But I think, again, there have been no notes sent from any of the jurors asking for clarification of the law. The defense counsel never asked the judge to inquire about what her understanding of the law was. That's correct, Your Honor. And so I don't think here that that certainly isn't the claim that Appellant is raising. Appellant is essentially saying that there was ambiguity as to whether or not the juror disagreed with the evidence, not that some effort should have been made to clarify the law to this juror. So we respectfully submit here that ambiguity isn't present, and unlike in Brown, the district judge here did not abuse his discretion. Can I have one quick follow-up question? If the judge, as the judge did ask, is that just because of the deliberations you made, and then the juror says yes, then what? I think then perhaps maybe one more question could have been asked, again, saying, but without telling me what's going on, is it because of a personality conflict? Is it because of disagreement? And if that became clear, that there was a disagreement between the jurors, perhaps one more question, is it a disagreement over the law, or is it something else without telling me about the nature of your deliberations? Then potentially that kind of a question could be asked. But again, I think it would be very, very difficult to do that without potentially intruding into the deliberations. And here I don't think that kind of a question was necessary because, again, the juror didn't say that this was because of deliberations. She kept coming back to the fact that she disagreed with the law and the instructions that the court had given. And so in that case, Judge Hogan did not abuse his discretion in granting her request to be excused. If there are no further questions, we would respectfully submit that the judgment of the district court should be affirmed. All right, thank you. All right, why don't you take a minute? Thank you. When Mr. Coleman indicated there were no notes, there were notes. That same college, since the juror was dismissed, there were notes. And one of them, if you look at it, it's in the deferred appendix at page 2562. The jurors had submitted three notes, which the judge said, I'm going to defer on these until we constitute the jury with the alternate. And one of the notes had to do with vicarious liability. The juror asked about CCE murders, about the RICO Act, and about vicarious liability and how it is applied. So they did have questions about vicarious liability. And as Judge Randolph indicates, there could have been a confusion or a misunderstanding about the law, because all of these murders except one were hinged on vicarious liability or aiding and abetting. The testimony here was all a cooperator witness. It wasn't a gun tying the defendant to the murder. So in this case, there should have been some very brief, narrow question asking about what the nature of the problem was, what's causing the stress, because on this record, it's just too ambiguous. All right. Mr. Graeber, you were appointed by the court to represent your client, and we thank you for your assistance. Thank you, Your Honor.
judges: Henderson, Srinivasan, Randolph